The document below is hereby signed.

Signed: February 7, 2016



_S. Martin Teel, Jr._
_United States Bankruptcy Judge_

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| GARRY SCOTT, | ) | Case No. 14-00715 |
| | ) | (Chapter 7) |
| Debtor. | ) | Not for publication in |
| | ) | West's Bankruptcy Reporter. |

MEMORANDUM DECISION RE
DEBTOR'S MOTION TO ENFORCE THE DEBTOR'S
AND THE VETERANS ADMINISTRATION STIPULATION OF SETTLEMENT

The debtor, Gary Scott, and the Veterans Administration reached a settlement, embodied in a *Stipulation of Settlement* (Dkt. No. 76) regarding alleged violations of the automatic stay. The *Stipulation of Settlement* called for $2,100 to be sent to Scott's attorney, Aikaterini Callahan. When the Government failed to send all but $1.00 of the required $2,100 payment to Callahan, she filed a motion on behalf of Scott regarding that failure.[1] The court directed that the motion was to be treated

---

[1] Scott's motion was titled *Motion To Open Case and Not Withdraw the Contested Matter* (Dkt. No. 83).

as a motion for enforcement of the *Stipulation of Settlement* and as including a request for additional sanctions based on lack of compliance with the *Stipulation of Settlement*, and set the matter for an evidentiary hearing.  The Government defends that the failure to transmit the $2,099 remainder of the required $2,100 payment to Callahan was justified based on the Government having properly set off that $2,099 under the Federal Treasury Offset Program (TOP) against a debt that the State of Maryland had certified was owed it by Scott.  After hearing evidence and argument of counsel, I make the following findings of fact and conclusions of law.

I

Scott filed his petition commencing this bankruptcy case on December 10, 2014, and was granted a discharge on June 2, 2015. After the case began, Scott filed a motion against the Veterans Administration seeking to recover damages under 11 U.S.C. § 362(k) for violation of the automatic stay.  The parties reached a settlement, embodied in a *Stipulation of Settlement and Withdrawal of Contested Matter* filed on August 5, 2015 (Dkt. No. 76).  That *Stipulation of Settlement* provided in relevant part:

> 1.   In this contested matter, the Veterans Administration (VA), creditor and the Debtor in this matter, pursuant to Fed. R. Bankr. P. 9014 and 11 U.S.C. § 362(k), shall deliver to Aikaterini Callahan, Debtor and Petitioner in this matter, a single check in the amount of Twenty-One Hundred Dollars ($2,100.00).  The check shall be made payable to Aikaterini Callahan. The check shall be mailed or otherwise delivered to 26031

2

>    Murrey Drive, Chantilly, VA 20152.  The Parties may also
>    agree to provide a means for payment by electronic funds
>    transfer from the U.S. Department of the Treasury to the
>    bank of Aikaterini Callahan, based on Counsel for
>    Petitioner providing required transfer information to
>    Counsel for the United States.
>
>    2. Payment shall be made as promptly as practicable,
>    consistent with the normal processing procedures followed
>    by the Department of Justice and the U.S. Department of
>    the Treasury, following the withdrawal of the
>    above-referenced contested matter pursuant to Paragraph
>    5 hereof.
>
>    *   *   *
>
>    5.  Petitioner's or Respondent's counsel may file
>    the fully executed Stipulation with the Court at any time
>    after its execution, and such filing shall constitute
>    withdrawal of the above-described contested matter,
>    except that the Court may retain jurisdiction of this
>    matter to enforce the terms of this Stipulation for a
>    period of 90 days. If Petitioner takes no action to
>    revive or pursue this action in the ninety (90) days
>    following the filing of this Stipulation and the Court
>    signing of the stipulation, then the withdrawal will be
>    final and binding, without further recourse.

Callahan later supplied information regarding her bank account to which the $2,100 payment should be transmitted.

On August 13, 2015, the Government's attorney then transmitted a *Judgment Fund Request* to a paralegal in his office listing the necessary information for the Department of Treasury to effect a payment from the judgment fund, specifically listing the name of the case, the name of Callahan as Scott's attorney, Scott's Social Security Number, and Callahan's bank information for purposes of an Electronic Funds Transfer.  The paralegal made an electronic transmittal to the Department of the Treasury.

3

Following U.S. Attorney office policy, in making that transmittal she listed the payee as being Callahan (as the attorney to whom the Electronic Funds Transfer would be made) with Scott's name added on as the judgment creditor.

On September 22, 2015, the Department of the Treasury effected a setoff of $2,099 of the $2,100 obligation owed Scott against a $2,350.53 debt that the State of Maryland had certified Scott owed the State of Maryland.  The Department transmitted a $2,099 payment to the State of Maryland on September 23, 2015. As to the $1.00 balance of the $2,100 settlement obligation owed Scott, on September 23, 2015, the Department of the Treasury made a $1.00 Electronic Funds Transfer into Callahan's bank account.[2]

On the same date, September 23, 2015, the Department of the Treasury issued a letter addressed to:

    AIKATERINI CALLA SCOT
    3700 EAST WEST HIGHWAY RM 630F

---

[2] Although it is of no consequence, I note that why $1.00 was paid to Scott is a mystery (as the debt asserted by the State of Maryland exceeded $2,099).  A witness from the Department of the Treasury's testimony could be taken as suggesting that the Department has a practice of paying $1.00 of the claim that is subjected to setoff to the creditor owed money by the Government (here, Scott) as either an accounting device in order to generate a record of disposition of the request for an Electronic Transfer of Funds or as a way of notifying that creditor (here, Scott) that, except for $1.00, the creditor is not receiving the full amount owed the creditor.  In addition, the Government submitted an affidavit (not in evidence) of a Maryland official reciting that the principal amount of the debt was $2,099 and the balance was for statutory collection fees.  However, no explanation was provided why the statutory collection fees would not be subject to being collected by way of the setoff program.

    HYATTSVILLE, MD 20782

The address was *not* Callahan's or Scott's address (but the address of another office of the Department of the Treasury), and neither of them received the letter.  The name on the letter was a result of how the paralegal had listed the payee in making the transmittal to the Department of the Treasury.  The letter explained in relevant part:

> As authorized by federal law, we applied all or part of your federal payment to a debt you owe.  The government agency (or agencies) collecting your debt is listed below.
>
> ```
> State of Maryland - CCU       TIN Num: [Redacted] -1652
> 80 CALVERT STREET              *    *    *
> P.O. BOX 746                  Amount This Creditor $2099.00
> ANNAPOLIS   MD 21404-0746      *    *    *
> ```
> **410-767-4001   (410)767-4001**
>
> The agency has previously sent notice to you at the last address known to the agency.  That notice explained the amount and type of debt you owe, the rights available to you, and that the agency intended to collect the debt by intercepting any federal payments made to you, including tax refunds.  **If you believe your payment was reduced in error or if you have questions about this debt, you must contact the agency at the address and telephone number shown above.** The U.S. Department of the Treasury's Bureau of the Fiscal Service cannot resolve issues regarding debts with other agencies.
>
> We will forward the money taken from your federal payment to the agency to be applied to your debt balance; however, the agency may not receive the funds for several weeks after the payment date.  If you intend to contact the agency, please have this notice available.

(Emphasis in original.)  Callahan (who was unaware of this letter) contacted the Government's attorney but was unable to

obtain a satisfactory explanation of why the full $2,100 payment had not been made to her: the Government attorney speculated that there had been a setoff but was unable to identify the debt that had been set off.  With the deadline being imminent for timely seeking to enforce the *Stipulation of Settlement*, Callahan filed Scott's motion to enforce the *Stipulation of Settlement* on November 2, 2015, the eve of the deadline.

In filing an opposition to Scott's motion on December 7, 2015, the Government attached a copy of the Department of the Treasury's letter of September 23, 2015.  Scott had never received a notice from the State of Maryland CCU (Central Collections Unit) regarding the debt he allegedly owed, and the Government's counsel was unable to identify the character of the debt that was set off other than its being a debt owed to the State of Maryland CCU.  At the initial hearing date on the motion, the Government's attorney was still unable to identify the character of the debt and was unprepared to put on evidence that there had been a setoff even though the matter had been set as an evidentiary hearing.  I continued the matter upon the conditions (1) that the Government take steps to get to the bottom of the matter; and (2) that the Government make efforts to cause the setoff to be set aside if it was a setoff the Government was not authorized to make, and if it was a setoff that the State of Maryland was barred from collecting (as

violating the automatic stay of 11 U.S.C. § 362(a) or the discharge injunction of 11 U.S.C. § 524(a)), that it impress upon the State of Maryland the necessity to disgorge the funds collected.

The claim certified by the State of Maryland to the United States Department of the Treasury for potential setoff against any amounts owed by the United States to Scott was a $2,350.53 fine relating to Scott's alleged failure to maintain insurance on Scott's automobile during the period of March 14, 2014 through December 31, 2014.  The debt the State of Maryland asserted arose as follows.  Scott owned an automobile that he transferred to Capital Auto Auction on May 5, 2014.  However, he failed to notify the Maryland Motor Vehicles Administration that he had transferred the car and did not turn in the vehicle tags.  That resulted in the Motor Vehicles Administration determining that he owed the $2,350.53 fine.

In January of 2016, upon learning the identity of the debt that had been set off, Scott visited the Motor Vehicles Administration and provided proof that he had transferred the vehicle on May 5, 2014.  This resulted in the Motor Vehicles Administration determining that only a fine of $301 was owed.  It advised Scott that in due course the amount that had been collected in excess of $301 would be refunded to him.  Scott also hopes to provide proof to the Motor Vehicles Administration that

he had insurance in place from March 14, 2014, to May 5, 2014, so as to be entitled to a full recovery of the amounts the Motor Vehicles Administration had collected.

Scott had lived on 7904 Bock Road, Fort Washington, Maryland until February 2013, and there is no evidence that he changed his Maryland driver's license address when he moved.  In 2015, the Motor Vehicles Administration made an unsuccessful effort to collect the debt (presumably sending a dunning letter to Scott at his address of record in the Motor Vehicles Administration's records).  On January 21, 2015, the Motor Vehicles Administration referred the debt to the State of Maryland Central Collections Unit, and sent Scott notice, addressed to his Bock Road address, of that referral.  The Central Collections Unit, in turn, sent what its own representative characterized as dunning notices to Scott at his Bock Road address on January 22, 2015, and February 23, 2015.  On April 4, 2015, the Central Collections Unit notified the Maryland Comptroller regarding the debt, and on August 18, 2015, the Comptroller certified the debt to the U.S. Department of the Treasury for potential setoff and sent notice of that certification to Scott at his Bock Road address.  On October 14, 2015, the Central Collections Unit received notice that the setoff at issue here had occurred.  Scott received none of those notifications sent to his Bock Road address.

Of the $2,350.53 debt, a large part was incurred

prepetition.  The filing of Scott's petition gave rise to an automatic stay under 11 U.S.C. § 362(a) which stayed collection of that prepetition part of the debt.  Until Scott was granted a discharge on June 2, 2015, collection of that prepetition part of the debt was subject to the automatic stay of 11 U.S.C. § 362(a).  Under 11 U.S.C. § 523(a)(7), the debt was not discharged.  Under 11 U.S.C. § 362(c)(2)(C), the entry of the discharge on June 2, 2015, terminated the automatic stay with respect to collecting the debt from other than property of the bankruptcy estate.

The court's file includes a certificate of mailing (Dkt. No. 7) reflecting that notice of the commencement of the case was sent to State of Maryland, Central Collection Unit, P.O. Box 17277, Baltimore, MD 21297-0386, on December 13, 2013.  Unfortunately, the Central Collection Unit failed to record the commencement of the bankruptcy case in its records and did not record in its records Scott's new address reflected by the notice of the commencement of the bankruptcy case.  Technically, the dunning notices it sent Scott, before the entry of Scott's discharge, may have been a violation of the automatic stay.  However, the issue here is whether the Department of the Treasury acted properly in satisfying $2,099 of its obligation to Scott by way of making the setoff at issue.

9

II

Under 31 U.S.C. § 3716(h)(1), the Secretary of the Treasury is allowed (subject to certain requirements) to apply the setoff provisions of § 3716(a) (applicable to debts owed federal agencies) to past-due debts owed a state.  Setoff is mandatory if a state debt has been certified for setoff.  *See* 31 C.F.R. § 285.6(c) (providing in relevant part that "[u]pon notification of a delinquent State debt from a participating State to Fiscal Service, disbursing officials of the United States shall offset the Federal payments specified in the reciprocal agreement to collect the State debt.")  Scott cannot dispute that, if there was a certification (facially complying with the requirements regarding certification of state debts) by the State of Maryland that the lapsed insurance fine was subject to setoff, the Department of the Treasury was obligated to make the setoff at issue.

A.

The regulation regarding administrative offset to collect state debts pursuant to 31 U.S.C. § 3716(h) is 31 C.F.R. § 285.6.  The Comptroller of Maryland executed an *Agreement to Certify State Debts* to allow it to participate in the Treasury Offset Program (TOP).  That *Agreement*, at page 2, recites:

> This Certification Agreement describes how debts are certified when they are submitted to TOP for offset, State Agency's responsibilities for certification, and to what facts the State Agency is certifying.  Certification

10

>is a representation that the debt meets all legal requirements at the time of submission to TOP. Because debts are submitted to TOP electronically, this Certification Agreement provides that the submission itself constitutes the State Agency's certification.
>
>### **Section II: Certification Terms**
>
>State Agency agrees that:
>
>\*     \*     \*
>
>B.   Debts are transmitted by State Agency to TOP for collection by offset via Electronic Transmission of Add Records or Update Records, as described in <u>Attachment A</u>, *Certification Terminology*. Each time State Agency submits Debts via an Add Record or Update Record, the State Agency is certifying the Debts;
>
>C.   Any person submitting Debts via an Add Record or Update Record has authority to certify the Debts on behalf of the head of State Agency, and State Agency will provide a copy of this Certification Agreement to any such person; and,
>
>D.   By submitting Debts via an Add Record or Update Record, the person submitting such Debts is certifying to Fiscal Service, under penalty of perjury, pursuant to 28 U.S.C. § 1746, that to the best of his or her knowledge and belief, the following is true and correct: [followed by a list of matters to which the person certifies in order to establish eligibility of the debt for setoff under TOP].

(Emphasis in original.) Here, as contemplated by the *Agreement*, there was an electronic transmission certifying Maryland's $2,350.53 claim for setoff under the statute and regulation.

One question presented is whether such an *electronic* transmission is a certification complying with the governing regulation. In relevant part, 31 C.F.R. § 285.6(d)(6) provides:

11

> At the time the creditor agency notifies Fiscal Service of a debt for purposes of collection by offset, the creditor agency shall provide, in the manner required by Fiscal Service, written certification to Fiscal Service that:
>
> \*   \*   \*
>
> (v) The individual **signing the certification** has the delegated authority to execute the certification on behalf of the head of the creditor agency[.]

(Emphasis added.)  In the case of setoffs of claims of federal agencies against amounts owed by the Federal Government, 31 C.F.R. § 285.5(d)(8) provides:

> Agencies will provide the certification in a form and manner prescribed by Fiscal Service.  Fiscal Service will instruct agencies as to the form such written certifications will take and how certifications can be delivered to Fiscal Service, **including**, but not limited to, **the use of electronic data transmission.**

(Emphasis added.)  No comparable provision exists in 31 C.F.R. § 285.6 with respect to states certifying debts for payment under TOP.  However, the governing statute, 31 U.S.C. § 3716(h)(1)(B)(3), confers authority on the Secretary to impose requirements in reciprocal agreements "appropriate to facilitate the offset and prevent duplicative efforts."  Similarly, 31 C.F.R. § 285.6(d)(1) provides in relevant part:

> Fiscal Service may enter into reciprocal agreements with States for administrative offset and State payment offset.  The agreements shall contain any requirements which Fiscal Service considers appropriate to facilitate the offset and prevent duplicative efforts, and shall require States to prescribe procedures governing the collection of delinquent State debts which are substantially similar to requirements imposed on Federal agencies pursuant to 31 U.S.C. 3716(b).

It would be peculiar for federal agencies to be allowed under 31 C.F.R. § 285.5(d)(8) to make electronic certifications of debts owed them for setoff purposes but for states not being permitted to make electronic certifications. The *Agreement to Certify State Debts* provided at § II.c.3.(a) that the State, in certifying a debt for setoff, must have complied with 31 C.F.R. § 285.5, and this suggests that the Secretary of the Treasury views setoff of debts owed states as generally being handled in the same fashion as setoff of debts owed the Federal Government.

    The Government did not present the actual electronic certification made by the State of Maryland. However, it presented testimony that the certification had been made. The *Agreement* contemplated that debts submitted for setoff by Maryland would be made by electronically submitting an Add Record, and the *Agreement* treats the officer making such a submission as certifying under penalty of perjury, pursuant to 28 U.S.C. § 1746, that to the best of his or her knowledge and belief the requirements for certification have been met. When a certification is made under § 1746, the person has "subscribed" that the document is true under penalty of perjury, meaning that the person has signed the document as being true and correct. Indeed, the form of certification set forth in the statute requires a signature. In other words, the *Agreement* contemplates that by pressing the button to make the electronic transmission,

the officer is treated as signing, under penalty of perjury, a certification that the debt is eligible for setoff.

This is comparable to an attorney filing in this court a document the attorney represents that the attorney is signing by the act of making the filing (with the attorney's act of thereby signing the document represented by the attorney including "/s/" followed by the attorney's typewritten name on the document). The Add Record submitted in this case likely did not include any "/s/" showing who signed the submission, but the point is that, whoever that person was, his or her act of submitting the document electronically is treated as a signing of the document. There may very well be questions as to who was that person. However, whoever that person was, the Secretary has treated that person as having signed the document. Although this may not be as satisfactory (particularly for those who grew up in a paper document world, versus the electronic document world) as an actual document bearing an inked signature, the Secretary has leeway to adopt electronic certifications of offset requests and to treat the act of submitting a setoff request as a signed certification in order readily to facilitate setoffs.

B.

Another question concerns the impact of 31 C.F.R. § 285.6(l), which provides:

> Limitations. A debt properly submitted to Fiscal Service or the State for administrative offset or State payment

14

> offset shall remain subject to collection until withdrawn by the entity that submitted the debt for collection, **provided the debt remains** past due and **legally enforceable** for purposes of administrative offset or State payment offset, as applicable.  A debt which has been reduced to a judgment shall remain legally enforceable for purposes of administrative offset and State payment offset for as long as the judgment remains enforceable against the debtor.

(Emphasis added.)  As stated in 31 C.F.R. § 285.5(b) ("Definitions") (applicable to the Department of the Treasury setting off a debt owed the Federal Government, and applicable under § II.c.3.(a) of the *Agreement to Certify State Debts* here to the State of Maryland):

> Legally enforceable refers to a characteristic of a debt and means there has been a final agency determination that the debt, in the amount stated, is due, and there are no legal bars to collection by offset. Debts that are not legally enforceable for purposes of this section include, but are not limited to, debts subject to the automatic stay in bankruptcy proceedings or debts covered by a statute that prohibits collection of such debt by offset. . . .

Scott appears to argue that the claim of the State of Maryland was not "legally enforceable" by way of setoff because the dunning letters were in violation of the automatic stay, thus making the dunning letters ineffective to constitute compliance with a requirement of notice to Scott before the State of Maryland was entitled to certify the debt to the Department of the Treasury for setoff.  Here, § II.c.3.(b) of the *Agreement to Certify State Debts* provided:

> At least 60 days prior to the electronic transmission of any Debt, State Agency has provided, or made a

15

>    reasonable attempt to provide in accordance with
>    applicable offset regulations, each debtor with:
>       i. A written notification, at the debtor's most
>    current known address, of the nature and the amount of
>    the Debt, State Agency's intention to collect the Debt
>    through administrative offset of Federal payments, and
>    an explanation of the debtor's rights;
>       ii. An opportunity to inspect and copy State
>    Agency's records with respect to the Debt;
>       iii. An opportunity for review within State Agency
>    of the State Agency's determination with respect to the
>    Debt, including the opportunity to present evidence
>    that all or part of the Debt is not past-due or legally
>    enforceable; and
>       iv. An opportunity to enter into a written
>    repayment agreement with State Agency.

I will assume, without the necessity of deciding, that issuance of such a notice (which the State of Maryland necessarily certified it made here) constituted a violation of 11 U.S.C. § 362(a)(6) as an "act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under [the Bankruptcy Code]." However, it does not matter for purposes of determining whether the Department of Treasury was authorized to make the setoff, the issue presented by the instant motion.

The regulation, 31 C.F.R. § 285.6(l), deals with whether a state is entitled to continue the certification of a claim for setoff after a passage of time despite any statute of limitations. It makes clear that the state is entitled to collect the debt only if it remains legally enforceable. It does not trump the Department of the Treasury's obligation under 31 C.F.R. § 285.6(c) to make a setoff so long as the debt has been

16

Case 14-00715   Doc 107   Filed 02/08/16   Entered 02/08/16 09:36:53   Desc Main
         Document      Page 17 of 20

certified for setoff.  Decisions uniformly treat the Secretary as not required to ascertain whether, in fact, a debt certified as eligible for setoff is ineligible for setoff because (contrary to the certification) the debt is not legally enforceable.  *See*, *e.g.*, *Tavares v. United States*, No. 13-1654, 2014 WL 4351532, at *3 (M.D. Pa. Sept. 2, 2014).  The Department of the Treasury would often have no way of knowing that a debt was not legally enforceable, and the setoff program's efficient administration necessarily depends on the Department of the Treasury being allowed to accept s state's representation that the debt certified for setoff is legally enforceable.

C.

Scott next argues that because the State of Maryland violated the automatic stay in sending dunning letters, the United States should take steps to rectify the situation by withholding other setoff amounts from Maryland in an amount sufficient to permit full payment to Scott of the $2,100 settlement amount.  He invokes 31 C.F.R. § 285.5(i)(2), which provides that if the Department learns from "a paying agency" that a payment should not have been made to a "creditor agency" then steps can be taken to rectify the situation.  However, this provision (part of 31 C.F.R. § 285.5 ("Centralized offset of Federal payments to collect nontax debts owed to the United States")) deals with setoffs of debts owed by a Federal agency (a

"creditor agency") against debts owed to a Federal agency (a "paying agency"). It has no applicability to setoffs under 31 U.S.C. § 3761(h) of debts owed to a state against debts owed by a Federal agency. No comparable provision exists in the regulation governing setoffs of debts owed to states, 31 C.F.R. § 285.6.

D.

Scott complains that the Government was well aware of the pendency of the bankruptcy case and ought not have made the setoff unless it first satisfied itself that the debt the State of Maryland had certified for collection was not barred by the automatic stay or by the discharge injunction. Even if there had been such an obligation, the setoff would have still been made upon making such an inquiry:

- By the time the setoff was made, Scott had already received a discharge, terminating the automatic stay.
- Because the debt was for a fine owed the State of Maryland, the debt was nondischargeable and unaffected by the discharge injunction.

Moreover, the Government had no such obligation. The state making a setoff certification is required not to make the certification if the collection of the debt by way of setoff would violate either the automatic stay or the discharge injunction. The Government's attorney properly submitted the $2,100 obligation to the Department of the Treasury for processing, and in addressing making the payment the Department discovered the certified setoff request. Under the regulations,

it had no authority to go behind the certification.

### III

I am sympathetic to Scott's frustration in it having taken so long to get to the bottom of why his attorney did not receive the full $2,100 to which he was entitled.  However, the Department of the Treasury acted properly in making the setoff of $2,099 against the debt that had been certified by the State of Maryland as eligible for setoff.  The Government's delay in getting accurate information to him regarding what had transpired is not a basis for holding that the Government failed to comply with the *Stipulation of Settlement*.

If Scott's motion can be read as seeking attorney's fees incurred in getting to the bottom of what appeared to be non-compliance, his motion set forth no basis for an award of such fees.  At the hearing, he mentioned Federal Rule of Bankruptcy Procedure 9011, but no such motion has been filed, and pursuit of such a motion would require observance of the so-called safe harbor provision of Rule 9011(c)(1)(A) (which affords the opposing party 21 days after service of the motion within which to withdraw the matter that the movant contends violated Rule 9011(b)).  He points to no other basis for awarding fees.

The confusion and delay that arose from the notice of setoff having erroneously listed the addressee as "AIKATERINI CALLA SCOT" and having been erroneously sent to an office of the

19

Department of the Treasury (instead of to Scott or his attorney, Callahan) is unfortunate.  However, the United States has not consented to being held liable for attorney's fees incurred by reason of such a mistake, and the Department of Treasury official who made the setoff and the Veterans Administration as the payment certifying agency are statutorily immunized from liability for such a mistake.  See 31 U.S.C. § 3716(c)(2) ("Neither the disbursing official nor the payment certifying agency shall be liable . . . (B) for failure to provide timely notice under paragraph (8).")[3]

                                IV

In light of the foregoing, Scott's motion will be denied. An order follows.

                                        [Signed and dated above.]

Copies to: Recipients of e-notifications of orders.

---

[3]  The notice obligation is contained in 31 U.S.C. § 3716(c)(7), not § 3716(c)(8) (which deals with the precedence of a tax levy over requests for administrative setoff). It is obvious that § 3716(c)(2)(B) in referring to timely notice under paragraph 8 means timely notice under paragraph 7 instead.  Under 31 U.S.C. § 3716(h)(3), "[i]n applying this section with respect to any debt owed to a State, subsection (c)(3)(A) shall not apply," thus implying that the rest of subsection (c) (including § 3716(c)(2)(B)) *is* to apply to setoffs of debts owed a State.